IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-cv-00657-BO

PHILIPS NORTH AMERICA, LLC )
)
Plaintiff, )
v. ) ORDER
)
MARTIN W. LITTLE )
)
Defendant. )

This matter is before the Court on Plaintiff Philips North America LLC's motion for partial summary judgment. [DE 44]. Philips seeks partial summary judgment on two issues. First, that the 2012 Ethics Agreement is a valid contract enforceable against Defendant Martin Little. Second, that some of Philips' proprietary documents, individually and compiled, constitute trade secrets. Little opposes the motion on both grounds, arguing that summary judgment in his favor is appropriate on both issues. For the following reasons, the Court denies Philips' motion for partial summary judgment.

BACKGROUND

Plaintiff Philips North America LLC creates and sells a range of medical imaging systems including x-ray, ultrasound, magnetic resonance, and computed tomography machines. Part of its business model is to services these systems, sending out field service engineers to the locations where the customer's systems are installed. Defendant Martin Little was one of these field service engineers. In 1985, Little began working for S&H Medical, which was later integrated into Philips. By the time he resigned from Philips in 2020, Little held the title of Field Service Engineer 3 and

was, at least in his own view, one of Philips most experienced field service engineers. (*See* [DE 45 at ¶¶ 1,2, 4–9]; [DE 53 at ¶¶1,2,4–9].)

To assist the field service engineers, Philips has developed a vast repository of proprietary documents and software tools. It has developed practices—practices whose temporal range Little disputes—for managing these documents and safeguarding their confidentiality, which it currently refers to as its Customer Service Intellectual Property ("CISP"). Philips keeps the CISP documents and software tools in a database called InCenter, where they are labeled according to Philips' views on their sensitivity. CISP Level 0 is the lowest level, then CISP Level 1, and then CISP Level 2. Some of the CISP Level 2 documents are legacy documents—known internally as "KNOVA files"—that were migrated into InCenter from a legacy database. To safeguard the confidentiality of its CISP in the InCenter database, Philips employs a number of policies. (*See* [DE 45 at ¶¶ 12–16, 22, 23, 31]; [DE 53 at ¶¶ 12–16, 22, 23 31].)

One of those policies is to monitor and control its employees access to CISP files through confidentiality agreements. Little was no exception. Although the parties dispute whether Little had signed a confidentiality agreement when he first joined Philips, it is undisputed that in 2012 Philips asked Little to complete an Ethics and Intellectual Property Agreement. The 2012 Ethics Agreement contains clauses prohibiting the disclosure of Philips' proprietary or trade secret information during or after employment. In exchange for Little's compliance, Philips allowed Little to continue his at-will employment. Little executed the agreement. (*See* [DE 45 at ¶¶ 34, 41–43, 45, 48]; [DE 53 at ¶¶ 34, 41–43, 45, 48].)

Philips alleges that Little engaged in conduct that breached the 2012 Ethics Agreement. Specifically, it claims that Little improperly disclosed Philips' confidential information, including trade secrets, to its competitors using a variety of electronic means. Philips filed the underlying

2

suit against Little alleging claims for (1) breach of contract; (2) misappropriation of Philips' trade secrets in violation of the federal Defend Trade Secrets Act ("DTSA"); (3) and misappropriation of Philips' trade secrets in violation of the North Carolina Trade Secrets Protection Act ("TSPA"); (4) Fraud; and (5) Unfair and Deceptive Practice in violation of N.C. Gen. Stat. § 75-1.1. (*See* [DE 1 at ¶¶ 40–112].)

In April 2023, Philips moved for partial summary judgment on sub-issues to its breach of contract and trade secrets claims. First, that the 2012 Ethics Agreement is a valid, enforceable contract. Second, that Philips' CISP Level 1 and Level 2 documents, individually and compiled, are trade secrets. For his part, Little opposes the motion. Pursuant to Local Rule 56.1(a), the parties have submitted statements of material facts. [DE 45; DE 53]. The Court held a hearing on 09 November 2023. The motion is ripe for decision.

## DISCUSSION

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if proof of its existence or non-existence would affect disposition of the case under applicable law." *Shaw v. Foreman*, 59 F.4th 121, 129 (4th Cir. 2023). An issue of material fact is genuine if the evidence offered is such that reasonable jury might return a verdict for the non-movant." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Philips faces a demanding test. "Where, as here, the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of a claim, cite the facts which it believes satisfies these elements, and demonstrates why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz*

3

*Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *Smith v. Ozmint*, 578 F.3d 246, 250 (4th Cir. 2009) ("As to those elements on which it bears the burden of proof, [the moving party] is entitled to summary judgment if the proffered evidence is such that a rational factfinder could only find for the [moving party]."). And, as with any motion for summary, the evidence must be construed in the light most favorable to the non-moving party and all reasonable inferences draw in its favor. *See, e.g., Anderson*, 477 U.S. at 255.

A. The 2012 Ethics Agreement is Unenforceable Against Little.

In North Carolina, "the elements of a breach of contract claim are (1) the existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 838, 843 (2000). For a contract to be valid, there must be offer, acceptance, and consideration. *See, e.g., Southeast Caisson, LLC v. Choate Const. Co.*, 247 N.C. App. 104, 110 (2016).

Here, consideration is the element in question. It is undisputed that the only consideration Little received for executing the Ethics Agreement was his continued at-will employment. [DE 45 at ¶¶ 45, 48]; [DE 53 at ¶¶ 45, 48].

Little argues that the 2012 Ethics Agreement is not supported by consideration and, consequently, is unenforceable as a matter of law. Little points to the North Carolina Supreme Court's decision in *Kadis v. Britt* for the general contract principle that continued at-will employment is not consideration to support a modification of an existing employment relationship. 224 N.C. 154 (1944). Thus, Little contends that summary judgment in his favor is proper under Rule 56(f) of the Federal Rules of Civil Procedure.

Philips responds that *Kadis* and its progeny apply only to covenants in restraint of trade. Unlike the contract in that case, Philips argues, the 2012 Ethics Agreement is designed to protect proprietary information, not restrain trade. Philips neither opposes nor seeks to prevent Little from

4

working. All it seeks is damages from his alleged breach of the 2012 Ethics Agreement. Philips points to the North Carolina Court of Appeals' decision in *Fraver v. North Carolina Farm Bureau Mutual Insurance Co.* for the proposition that continued at-will employment is sufficient consideration. 69 N.C. App. 733, 738 (1984).

Philips reliance on *Fraver* is misplaced. Whether the 2012 Ethics Agreement is unenforceable for lack of sufficient consideration does not hinge on what that agreement seeks to accomplish. Instead, it comes down to the nature of the consideration offered. Once an employment relationship has begun, continued at-will employment is not sufficient consideration because it is illusory consideration. And it is illusory because it is something that "is given and [can be] taken in the same breath." *Kadis*, 224 N.C. at 163; *see also McLamb v. T.P. Inc.*, 173 N.C App. 586, 591 (2005) (citing *Kadis* for the principle that "consideration which may be withdrawn on a whim is illusory consideration which is insufficient to support a contract"); *RLM Commc'ns., Inc. v. Tuschen*, 66 F.Supp.3d 681, 692 (E.D.N.C. 2014) (same).

Sitting in diversity, this Court is obligated to apply the jurisprudence of the North Carolina Supreme Court. *See Priv. Mortg. Inv. Servs., Inc. v. Hotel and Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002). If that court "has spoken neither directly nor indirectly on" the issue, this Court must "predict how that court would rule if presented with the issue." *Id.* To that end, the decisions of the North Carolina Court of Appeals like *Fraver* may be instructive because they are "the next best indicia of what state law is," yet the Court is free to disregard them if it is convinced that the North Carolina Supreme Court would decide otherwise. *Id.* (internal quotation marks and citation omitted).

Like other courts in North Carolina, the Court is convinced that the North Carolina Supreme Court's holding in *Kadis* cannot be read to apply to only some contracts but must instead

5

be read as a general rule on whether continued at-will employment is sufficient consideration when there is an existing employment relationship. *See RoundPoint Mortg. Co. v. Florez*, No. 13 CVS 8803, 2016 NCBC LEXIS 17, at *124 (N.C. Super. Ct. Feb 18, 2016); *Addison Whitney, LLC v. Cashion*, No. 17 CVS 1956, 2017 NCBC LEXIS 23, at *24–25 (N.C. Super. Ct. Mar. 15, 2017). Accordingly, the 2012 Ethics Agreement is unenforceable against Little for lack of sufficient consideration. The Court, therefore, denies Philips' motion for summary judgment and dismisses its breach of contract claim.

B. Genuine Disputes of Materials Facts Exist on the Trade Secrets Claims.

It is appropriate to begin with the test that Philips' must satisfy. The existence of a trade secret is ordinarily a question fact to be determined by the fact finder, and, thus, is not typically resolved at summary judgment. *See Synopsys, Inc. v. Risk Based Sec., Inc.*, 70 F.4th 759, 769 (4th Cir. 2023). Still summary judgment can be appropriate when the record does not create a genuine issue of material fact as to the necessary elements. *Id.*

To prevail on a DTSA claim, a plaintiff must show (1) the existence of a trade secret, (2) its misappropriation, and (3) that it implicates interstate and foreign commerce. *dmarcian, Inc. v. dmarcian Eur. BV.*, 60 F.4th 119, 141 (4th Cir. 2022). Philips moves for partial summary judgment on the first requirement—that the information at issue is a trade secret. No easy task. *See, e.g., Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003) ("The existence of a trade secret ordinarily is a question of fact. . . . [A] trade secret is one of the most elusive and difficult concepts in the law to define." (quotations omitted)).

The DTSA defines a trade secret as "financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes methods, techniques, processes, procedures, program or codes . . . [whose]

6

owner ... has taken reasonable measures to keep such information secret; and the information derives independent economic value ... from not being generally known ... [or] readily ascertainable." 18 U.S.C. § 1839(3).

The TSPA similarly defines a trade secret as "business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique or process that derives independent actual or potential commercial value from not being generally known or readily ascertainable ... and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.C. Gen. Stat. § 66-152(3).

Because the standards for the TSPA and the DTSA are closely aligned, courts handling both claims routinely analyze them as one. *See Design Gaps, Inc. v. Hall*, No. 3:23-cv-186, 2023 U.S. Dist. LEXIS 208773, at *22 n.3 (W.D.N.C. Nov. 20, 2023); *Syngenta Seeds, LLC v. Warner*, No. 20-cv-1428, 2023 U.S. Dist. LEXIS 32492, at *18 (D. Minn. Feb. 8, 2023); *Power Home Solar, LLC v. Sigora Solar, LLC*, No. 20 CVS 7165, 2021 NCBC LEXIS 55, at *30–31 (N.C. Super. Ct. Jun. 18, 2021).

Turning to the trade secrets at issue, Philips describes its CISP Level 1 and CISP Level 2 documents at a level of abstraction that precludes summary judgment in its favor. In support of its motion, here's how Philips describes the purported trade secrets located in the InCenter database:

- "CISP Level 1 information includes, among other things software and diagnostic tool documents for providing advanced services on Philips systems." [DE 45 at ¶ 28];
- "CISP Level 2 [information] includes more advanced proprietary information and tools, such as higher-level, more detailed service tools." The CISP Level 2 documents also include " 'KNOVA files' that can be used to diagnose and resolve potential problems with Philips systems." [DE 45 at ¶ 30, 31].

7

The deficiency in the Philips' descriptions stems from their generality and what that demands from the Court. It is not for courts to sift through the record in search of documents that meet the definition of a trade secret. *See Idx. Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2001). That's the plaintiff's job. And to identify a trade secret with sufficient particularity, a plaintiff must refer to specific trade secret materials and may not rely on catch-all phrases or categories of trade secrets they intend to prove at trial. *InteliClear, LLC, v. ETC Global Holdings, Inc.*, 978 F.3d 633, 658 (9th Cir. 2020).

Had Philips provided only the general descriptions above, it would be difficult to see how it alleged its trade secrets with sufficient particularity. But Philips has identified nine CISP Level 1 and CISP Level 2 documents. *See* [DE 47-4; 47-5; 47-6; 47-7; 47-8; 47-9; 47-10; 47-11; 47-12; 47-13]. Taking these documents into consideration, Philips has done more than rely on catch-alls or categories of documents. So, contrary to Little's arguments, Philips has done enough to create a triable issue. *See InteliClear*, 978 F.3d at 658–59 (concluding that a genuine dispute of material fact existed where general declarations were bolstered by specifics).

On the other hand, the documents provided are just a smattering of the potentially thousands, if not tens of thousands of documents, which Philips contends are trade secrets. The Court agrees with Little that it is unable to declare those documents as trade secrets on this record. Put simply, Philips hasn't done enough to carry its burden for summary judgment, but it has done enough to warrant putting the issue before a jury.

Furthermore, in response to Philips motion, Little points to documents in the record that raise a genuine dispute as to whether many of the CISP Level 1 and CISP Level 2 documents are trade secrets. [DE 53, ¶¶ 18, 31]; [DE 52 at 20–21]. In response, Philips stresses that a compilation can still be a trade secret even if some of its parts are not. Philips is not wrong: A trade secret may

8

be composed of elements that are generally known or readily ascertainable so long as the whole is unique and offers a competitive advantage. *Elmagin Cap., LLC v. Chao Chen*, 555 F.Supp.3d. 170, 179 (E.D. Pa. 2021); *see also Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 540–41 (7th Cir. 2021) (pointing out that a trade secret can exist even if parts are in the public domain so long as the unique combination has public value). But given the evidence that Little has provided, Philips has not carried its burden to show that it is entitled to summary judgment on the issue that the compilation of CISP Level 1 and CISP Level 2 documents are trade secrets.

In sum, given the existence of genuine disputes of material fact as to the existence of trade secrets, it would be improper to preclude a jury from making that determination. Accordingly, because Philips has failed to carry its burden of showing that no genuine dispute of material fact exists, the Court denies its motion for partial summary judgment as to the existence of trade secrets.

## CONCLUSION

For these reasons, Philips' motion for partial summary judgment [DE 44] is DENIED. Philips' breach of contract claim is DISMISSED.

SO ORDERED, this 18 day of January 2024.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE